5E5-092767

**EQUICO SECURITES**
1755 Broadway
3rd Floor
New York, New York 10019

*Cash Account Application*

## Customer Information (Please Print)

(Office Use Only)                    ESRR #

| 5 | E | 5 | – | 0 | 9 | 2 | 7 | 6 | 7 | M | 4 | 9 |

| Account Name (Mr.) | Mrs. | Ms. | Birthdate | Soc Sec or Tax ID # |
|---|---|---|---|---|
| Neil Rick | | | 1/11/50 | 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 |
| Joint Tenant Name (If Applicable) | | | Birthdate | Soc Sec or Tax ID # |

| Mailing Address | Street |
|---|---|
| 39 Token Street | |

| City | State | Zip Code |
|---|---|---|
| Staten Island, N.Y. | 10312 | |

Home Phone: (718) 948-9334
☐ US Citizen   ☐ Resident Alien
☐ Non Resident Alien

| Home Address If Different From Above | Street | City | State | Zip Code |
|---|---|---|---|---|

| Employed By Oars & Geo | Occupation | Years Employed | Annual Income (Previous Year) |
|---|---|---|---|
| Street | | | 200,000 |
| Address Brooklyn, R 3711 718'499 | | Business Phone | Net Worth 2,000,000 |

| Joint Tenant Employed By | Occupation | Years Employed | Annual Income (Previous Year) |
|---|---|---|---|
| Address | | Business Phone | Net Worth |

## Financial Relationships - (Complete All Areas)

| Bank Reference | (Account #) | (Address) |
|---|---|---|
| Kleinman Savings | 20185789 | Staten Island |

Are you or any member of your immediate family affiliated with or employed by a member firm of a stock exchange, a bank, trust company or insurance company or The National Association of Securities Dealers, Inc.?   ☐ Yes   ☐ No

Are you or any member of your immediate family affiliated with or employed by The Equitable Life Assurance Society of the United States or any of its subsidiaries?   ☐ Yes   ☐ No

If Yes to either question please indicate any such affiliation _____

| Name of Agent | Agent Address: De Paer |
|---|---|
| Maurice W. Passacantando | Hyde Park, N.Y. 1142 |
| 063198-M49 | |

If your Equitable Agent is a qualified representative of Equico Securities, he or she will receive copies of your account statements. Agents are not authorized to provide advice or recommendations respecting any order.

## Account Opening Instructions

**Account Type (Select One)**

☐ Individual
☐ Joint tenants WROS
☐ Community property
☐ Tenants in common
☐ Tenants in entirety
* Please forward proper documents with application.

☐ Custodian For A Minor
☐ Corporation/Partnership*
☐ Trust Fiduciary*
☐ Other

**Handling Instructions**
Unless otherwise indicated below, all proceeds/income/securities will be forwarded to the mailing address indicated in the Customer Information section of this form.

| | Hold** | Send |
|---|---|---|
| Proceeds | ✓ | |
| Income | | ✓ |
| Securities | | ✓ |

** Free credit balances averaging $500 or more awaiting reinvestment in your account earn interest.

**Special Instructions**

## Agreement

**To: Equico Securities, Inc.**
In consideration of Equico Securities, Inc. accepting this account, I/We hereby acknowledge that I/We have read and understand the terms set forth in the Customer Agreement on the reverse side of this application and agree to such terms.
"Under penalties of perjury, I certify (1) that the number shown on this form is my correct taxpayer identification number, and (2) that I am not subject to backup withholding because (a) I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (b) the Internal Revenue Service has notified me that I am no longer subject to backup withholding." (Note: If you have been notified that you are subject to backup withholding and the Internal Revenue Service has not yet advised you that backup withholding has been terminated, strike out item (2).)

*This Agreement contains a pre-dispute arbitration clause in paragraphs 19 and 20 on the reverse side of this page. I acknowledge receiving a copy of this Agreement.*

| Signature | Date 8/8/90 | Signature (Joint Tenant) | Date |
|---|---|---|---|

| Equico Use Only | Reviewed By | Approved By | Date 8/9/90 |
|---|---|---|---|

HOME OFFICE COPY

Form # EQEB02  (Rev. 9/89)

# CUSTOMER AGREEMENT

TO: EQUICO SECURITIES, INC.

This is my Customer Agreement with you. In the event you approve my Application and open one or more brokerage accounts on my behalf, I agree as follows:

1. MEANING OF WORDS IN THE AGREEMENT. The words "I," "me," "my," "we," and "us" refer to the person(s) or entity that has signed the Application and Agreement. The words "you" and "your" refer to Equico Securities, Inc. The word "Pershing" shall mean the Pershing Division of Donaldson, Lufkin and Jenrette Securities Corporation through which all customer securities accounts shall be carried.

2. AUTHORITY AND OWNERSHIP. I represent that I have legal capacity, and am authorized, to enter into this Agreement and have obtained and shall provide you with all necessary authorizations from third parties to open my brokerage account(s) and effect transactions in securities purchased, held and sold by me through you. I shall be the owner of my account(s) or shall have the legal capacity to control the assets in the account(s). Any grant of authorization to you under this Agreement shall also be deemed to be a grant of similar authorization to Pershing.

3. NO ADVICE. All transactions shall be done only on my order except as described in paragraph 6; all orders shall be entered on an unsolicited basis and all transactions shall be without recourse to you.

In placing any order, I represent that I have not received, or if offered have not relied upon, any recommendations or suggestions from you or your representatives respecting the trade. I agree that I am responsible for making all final decisions as to each transaction effected in any account of mine at your firm. I understand that each order I enter (to buy or to sell) must be complete as to security, quantity, price and duration of the order.

4. APPOINTMENT OF AGENT. I appoint you as my agent to carry out my instructions for the purchase or sale of securities. I authorize you to open or close brokerage accounts with Pershing, place and withdraw orders, provide information to Pershing and other third parties and take such other steps as are reasonable to carry out my instructions. I understand that you may at any time refuse or limit any transaction which I may wish to effect.

5. ORAL INSTRUCTIONS. You may follow my oral instructions and those of my authorized agent, and you shall not be liable for acting upon any such instructions which you believe in good faith to have been so given. I understand that you shall provide me with one or more telephone numbers which may be used for the purpose of giving oral instructions during the hours and on the days permitted by you and that for our mutual protection you may record such telephone conversations.

6. INDEBTEDNESS TO EQUICO SECURITIES, INC. If you are unable to settle the purchase or sale of any security because of my failure to make payment or deliver securities in good form, I authorize you to take appropriate steps to cancel the transaction to minimize your loss, and I shall reimburse you for any and all costs, losses or liabilities incurred by you, including attorneys' fees.

Any and all credit balances, securities and other property belonging to me or in which I may have an interest which are held by you or carried for my accounts shall be subject to a general lien for the discharge of my obligations to you; may be carried in general loans accounts maintained by you or by Pershing without notice to me, and all securities may be pledged, repledged, hypothecated or rehypothecated, separately or in common with other securities, for the sum due to you thereon or for a greater sum and without your retaining in your possession and control for delivery a like amount of similar securities or other property. At any time you may in your discretion, without notice to me, apply and/or transfer any securities, cash or other property therein interchangeably between any of my accounts. Whenever, in your discretion, you deem it desirable for your protection, you may, without prior demand, tender or notice, sell any or all securities or other property which may be in your possession or which you may be carrying for me or buy any securities or other property of which my account or accounts may be short, in order to close out in whole or in part any commitment in my behalf. Such sale or purchase may be made at your discretion on any exchange or other market where such business is then transacted. All costs and expenses in connection with any such sale or purchase shall be borne by my account. In enforcing your lien and making any such sales, you shall have the discretion to determine which securities and property are to be sold and which contracts are to be closed.

If I owe you money in the operation of my brokerage account(s), I shall pay the debt on demand. If I fail to pay the debt after demand, you may close my account and liquidate any assets then in it or otherwise held by you or Pershing and I shall be liable to you for any deficiency. It is understood and agreed that debit balances in any of my accounts shall be charged interest at the prevailing rate as determined by you.

7. LIABILITY. Neither you nor Pershing shall be liable for any loss or delay caused directly or indirectly by war, natural disasters, government restrictions, exchange or market rulings, interruption or malfunction of communications facilities or other conditions beyond your reasonable control. In no event shall you or Pershing be liable for indirect, incidental, special or consequential damages, even if you are advised as to the possibility thereof.

8. CREDIT INVESTIGATIONS. You may exchange credit information about me with others. You may request a credit report on me and upon request, you will state the name and address of the consumer reporting agency that furnished it. If you extend, update or renew my credit, you may request a new credit report without telling me.

9. RELATIONSHIP WITH PERSHING. You may share with, remit to or otherwise pay Pershing for its services from your commissions and fees charged to me. I understand and agree that Pershing may refuse to accept or carry my brokerage account(s) or to process any transactions which I may wish to effect. I authorize you to accept on my behalf information, advices and notices to me. I understand that summary monthly statements of activity in my brokerage account(s), as well as certain other documents and communications, shall be mailed to me directly by Pershing, but that statements shall only be mailed quarterly in the event there are balances or positions in my brokerage account(s) and there has been no other activity. I agree to notify you promptly by telephone (followed by prompt written confirmation) of any error or discrepancy in, or objection to, any confirmation, advice or statement.

10. RESTRICTED SECURITIES. I shall not buy or sell securities of a corporation of which I am an affiliate or sell any restricted securities except in compliance with applicable laws and regulations.

11. FEES AND CHARGES. I shall pay the fees and charges shown on your fee schedule which you have given to me or on any amendments. You may change the fee schedule from time to time.

12. TWO OR MORE BROKERAGE ACCOUNTS. In the event you open two or more brokerage accounts in my name, I shall be the sole owner of the accounts or shall have the legal capacity to control the assets in the accounts; the accounts shall be kept separate for my convenience only and each account shall unreservedly guarantee each other account.

13. JOINT ACCOUNTS. If two persons have signed this Application and Agreement, unless we notify you otherwise and provide such documentation as you require, the brokerage account(s) shall be held by us jointly with right of survivorship (payable to either or the survivor of us). Each joint tenant irrevocably appoints the other as attorney-in-fact to take all action on his behalf and to represent him in all respects in connection with this Agreement. You shall be fully protected in acting upon the instructions of either of us, in sending confirmation advices, notices or other communications to either of us, or in otherwise dealing with either of us. Each of us shall be liable, jointly and individually, for any amounts due to you pursuant to this Agreement, whether incurred by either or both of us.

14. SEVERABILITY. If any provision of this Agreement shall be invalid, illegal or unenforceable under any law or regulation, it shall not affect the validity of the remaining provisions of this Agreement which shall remain in full force and effect.

15. RELATIONSHIP WITH OTHER AGREEMENTS. The rights and obligations contained within this Agreement shall be in addition to those contained in any other agreement I may enter into or have with you.

16. AMENDMENTS AND TERMINATION. You may amend this Agreement at any time in any respect effective five days after you have mailed written notice to me. You may terminate this Agreement, at your discretion, at any time effective upon your sending of written notice to me and. I shall continue to be responsible for any obligation incurred by me prior to termination. It is agreed, as one of the conditions on which you transact business for me, that this Agreement cannot be modified or any of its provisions waived except by a writing signed by an officer of Equico Securities, Inc. and, without limiting the foregoing, that (a) no employee or agent of yours shall have authority to modify this Agreement or waive any of its provisions, either orally or (except by an officer of yours) in writing; and (b) no waiver of any provision of this Agreement shall be deemed a waiver of any other provision nor a waiver in any other instance.

17. ADDRESS FOR PURPOSE OF COMMUNICATION. I understand that any notice of communication sent by you or Pershing will be sent to me at my address as it appears on your books. Should I change my address, I shall notify you at once in writing.

18. GOVERNING LAW. I understand that all orders and transactions with respect to my brokerage account(s) shall be subject to the constitution, rules, regulations, customs, usages, rulings and interpretations of the exchange or market, and the clearing facility, if any, where the transactions are executed and/or settled, or if applicable, of the National Association of Securities Dealers, Incorporated and to all applicable laws and regulations. This Agreement shall be governed by the laws of the State of New York.

19. ARBITRATION DISCLOSURES. —
* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.
* THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.
* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

20. AGREEMENT TO ARBITRATE CONTROVERSIES. IT IS AGREED THAT ANY CONTROVERSY BETWEEN US ARISING OUT OF YOUR BUSINESS OR THIS AGREEMENT, SHALL BE SUBMITTED TO ARBITRATION CONDUCTED BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR ANY OTHER NATIONAL SECURITIES EXCHANGE ON WHICH A TRANSACTION GIVING RISE TO THE CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE) OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., AS THE UNDERSIGNED MAY ELECT AT YOUR ELECTION IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. ARBITRATION MUST BE COMMENCED BY SERVICE UPON THE OTHER PARTY OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE, THEREIN ELECTING THE CHOICE OF TRIBUNAL. IN THE EVENT THE UNDERSIGNED DOES NOT MAKE SUCH ELECTION WITHIN FIVE (5) DAYS OF SUCH DEMAND OR NOTICE, THEN THE UNDERSIGNED AUTHORIZES YOU TO DO SO ON BEHALF OF THE UNDERSIGNED.

Form # EQEB02   (Rev. 9/89)