UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

H. THOMAS MORAN, II, *et al.*,

        Plaintiffs,

  -against-

MORTON GOLDFARB, *et al.*,

        Defendants.
----------------------------------------------------------------X

Index No. 09-CV-07667

---

## DEFENDANT UCHITEL'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

FINKELSTEIN & FEIL, LLP
666 Old Country Road, Suite 210
Garden City NY 11530
Tel. (516) 280-3660
Fax (516) 280-3661

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I. Mr. Uchitel had Causes of Action for Fraud Accrue Against the Gemini Fund on March 3, 1997. .......................................................................................................... 1

    II. As Mr. Uchitel Would Have Been Entitled to a $250,000.00 Judgment on March 3, 1997, He Also is Entitled to the Legal Rate of Interest Running From that Date. ............................................................................................................................ 3

    III. Should this Court Not Find Mr. Uchitel Entitled to Statutory Interest, Mr. Uchitel Should be Entitled to a Reasonable Rate of Return or, at the Very Least, the Rate of Inflation .................................................................................................... 4

CONCLUSION .................................................................................................................... 6

## TABLE OF AUTHORITIES

**Cases**

*Boltin v. Lavrinovich*, 2010 WL 3033751 (N.Y. Sup.) .................................................................. 2

*Crigger v. Fahenstock & Co., Inc.* 443 F.2d 230 (2 Cir, 2006) ...................................................... 3

*Dybowski v. Dybowska*, 146 A.D.2d 604 (2 Dep't 1989) .............................................................. 2

*Flamm v. Noble,* 296 N.Y. 262 (1947) ........................................................................................... 3

*In re Final Accounting of Public Adm'r of Kings County*, 918 N.Y.S.2d 397 (N.Y. Sur. 2010) .... 4

**Statutes**

CPLR 5001 ...................................................................................................................................... 4

CPLR 5003 ...................................................................................................................................... 4

CPLR 5004 ...................................................................................................................................... 4

Debtor and Creditor Law §§273-278 .............................................................................................. 2

## PRELIMINARY STATEMENT

In or about 1992, Mr. Edward Stein ("Mr. Stein") set up an investment fund known as the Gemini Fund I, LP (the "Gemini Fund"), which was supposedly a feeder vehicle into other types of investment vehicles.

On or about March 3, 1997, at the recommendation of his investment advisors, Mr. Larry Passeretti, Philip Uchitel ("Mr. Uchitel") invested $250,000.00 of his retirement savings in the Gemini Fund. Unbeknownst to Mr. Uchitel, or anyone else, the Gemini Fund was nothing more than a Ponzi scheme being run by Edward Stein ("Mr. Stein").

Mr. Uchitel left his investment in the Gemini Fund, where it purportedly grew over time. In 2002, Mr. Uchitel began taking withdrawals from his investment in order to live on during his retirement. At this point in time, his "balance" was approximately $430,000. Over time, Mr. Uchitel withdrew a total of $464,643.89, until he had exhausted the entire balance in May, 2005.

Now, the Receiver for the Gemini Fund seeks to recover from Mr. Uchitel his profits resulting from his investment in the Gemini Fund. However, the fact remains that the only difference between Mr. Uchitel and the more recent investors who lost money is that of timing. Mr. Uchitel was a victim of the exact same fraud as those represented by the receiver in this case, But for his timing, Mr. Uchitel would be seeking to recover, not to be recovered from.

## ARGUMENT

I. Mr. Uchitel had Causes of Action for Fraud Accrue Against the Gemini Fund on March 3, 1997.

Mr. Uchitel deposited the total of $250,000.00 in the Gemini Fund on March 3, 1997. As the Gemini Fund was a Ponzi Scheme, Mr. Uchitel was, upon information and belief, at that

1

<966>moment[1], an unwitting victim of Mr. Stein's massive fraud. Mr. Uchitel, at that moment, had ripe causes of action against Mr. Stein for fraud and fraudulent conveyances. Under New York Law, a cause of action for fraud (actual or constructive) accrues when the fraudulent act is committed. *See Boltin v. Lavrinovich*, 2010 WL 3033751 at *7 (N.Y. Sup.) ("In order to avoid the statute of limitations, a claim for fraud must be plead within six years from the date of the commission of the fraud or two years from after the fraud was or should reasonably have been discovered, whichever is longer."), *Dybowski v. Dybowska*, 146 A.D.2d 604 (2 Dep't 1989) ("the period of limitations for constructive fraud accrues at the time the alleged fraud was committed and not when it was discovered and is subject to the six-year Statute of Limitations governing equitable actions").

Indeed, as he was a victim of the exact same scheme, Mr. Uchitel would possess all of the same causes of action against Mr. Stein as the receiver asserts herein. To wit, Mr. Uchitel would have had causes of action for both constructively and actually fraudulent transfers pursuant to New York's Debtor and Creditor Law §§273-278.

Additionally, (had he known of course) Mr. Uchitel would have had a cause of action against Mr. Stein and the Gemini Fund for common law fraud for their misrepresentations regarding his supposed "investment" in the Gemini Fund. Mr. Uchitel was immediately harmed, as his money was being used to repay other investors. New York's common law fraud requires Mr. Uchitel to demonstrate five elements: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *See, e.g., Crigger*

---

[1] There has never been specific proof submitted as to precisely when the actual fraud commenced. Mr. Stein's best guess is that it began "Around 1998." Plaintiff's Exhibit 2, p.40, ln 19.

2

*v. Fahenstock & Co., Inc.* 443 F.2d 230, 234 (2 Cir, 2006). The victim of a Ponzi scheme certainly has a cause of action against the schemers for common law fraud. *See, e.g., id.*

It is clear that Mr. Uchitel had a cause of action for fraud accrue on the date of his investment in the Gemini Fund, and would have been theoretically entitled to a judgment in the amount of $250,000.00 on March 3, 1997.

### II. As Mr. Uchitel Would Have Been Entitled to a $250,000.00 Judgment on March 3, 1997, He Also is Entitled to the Legal Rate of Interest Running From that Date.

The Receiver's attempt to recoup funds from Mr. Uchitel and the others who withdrew more than they put in, if successful, would leave Mr. Uchitel with the exact same number of dollars as he invested 14 ½ years ago. However, this would not leave Mr. Uchitel in the same position as he would have been as if he never made this investment. Because of inflation, his $250,000.00 principal would be worth far less today than the $250,000.00 he invested in 1997. In order to more accurately demonstrate economic reality and to have the scales of justice be fair on both sides; whereby Mr. Uchitel is not damaged by having to disgorge not only his "profit," but also recognizing that he would be having 14 ½ years of profit making potential and 14 ½ years of the time value of money taken away from him as well; some measure of interest should be credited to Mr. Uchitel for the time since his investment. It is for these very reasons that, when a party prevails in a lawsuit, interest is awarded (both pre-judgment and post-judgment) on the value of the recovery.

CPLR 5001(a) provides that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act of omission depriving or otherwise interfering with ... possession or enjoyment of property." Causes of action for fraud are included in this definition. *See, e.g., Flamm v. Noble*, 296 N.Y. 262, 268 (1947); *In*

3

*re Final Accounting of Public Adm'r of Kings County*, 918 N.Y.S.2d 397 (N.Y. Sur. 2010). Interest is calculated from the earliest ascertainable date a cause of action existed. CPLR 5001(a). Additionally, all money judgments in New York accrue interest upon their entry. CPLR 5003. Finally, New York's statutory interest rate is nine percent (9%) per annum. CPLR 5004.

As previously stated, a measure of interest should be afforded to Mr. Uchitel based on the fact that 14 ½ years have passed since his unfortunate involvement with the Gemini Fund began. Mr. Uchitel had a legitimate claim for fraud as of the date of his investment. As such, the Receiver should be entitled to collect only the difference between the $464,643.89 Mr. Uchitel withdrew and his $250,000.00 initial deposit plus the New York statutory rate of interest running since March 3, 1997, which equates to $22,500 per year (a 9% annual return on $250,000). Fourteen and a half years of the legal rate of interest on Mr. Uchitel's deposit is $326,250.00. As this exceeds the amount of profit sought by the Receiver, the amount of the summary judgment granted should be zero.

III. Should this Court Not Find Mr. Uchitel Entitled to Statutory Interest, Mr. Uchitel Should Be Entitled to a Reasonable Rate of Return or, at the Very Least, the Rate of Inflation.

As previously stated, Mr. Uchitel should be entitled to some measure of interest on his money. If this Court is not inclined to grant the statutory rate of interest to Mr. Uchitel, other measures often used in financial matters may be applicable.

A reasonable expected return on one's money in CDs in a bank over the last 14 ½ years would be about 5%. A 5% annual rate of return on $250,000.00, even excluding compounding, is $12,500.00 per year. Over 14 ½ years, Mr. Uchitel would have had a return of $181,250.00 on

4

his money. Crediting Mr. Uchitel with this rate of return would reduce the amount of Plaintiff's summary judgment, if granted, to $33,393.89.

Alternatively, indices such as the S&P 500 are frequently used to demonstrate hypothetical growth of investments. On March 3, 1997, the S&P 500 index was at 795.31. Today, that index stands at 1238.26, an increase of 55.7%. Had Mr. Uchitel been invested strictly in the S&P 500, he could have expected a return of 55.7% on his principal, or $139,238.16. Crediting Mr. Uchitel with this rate of return would reduce the amount of Plaintiff's summary judgment, if granted, to $75,405.73.

If no measure of interest is granted, and Mr. Uchitel is required to return all money over and above his $250,000.00 deposit, Mr. Uchitel will be significantly damaged because of inflation. Though he would be left with the same amount of dollars he originally deposited in the Gemini Fund, in a very real sense, he will have paid a significant sum of money over and above his investment as a result of Mr. Stein's fraudulent activities. As previously stated, Mr. Uchitel will have given up 14 ½ years of earning potential on this money. More importantly, the present day value of $250,000.00 is worth far less than $250,000.00 in 1997 dollars. In fact, $250,000.00 in 1997 is equal to $353,169.66 today[2], and this is the amount this Court should consider Mr. Uchitel's deposit to be, when considering its value in 2011 dollars. If the Court does not take into account this baseline rate of inflation, Mr. Uchitel will be required to pay approximately $103,169.66 in today's dollars because of Mr. Stein's fraud. It is inequitable for Mr. Uchitel to be required to pay for the wrongs of others. Thus, at the very least, if this Court is inclined to grant Plaintiff's motion, summary judgment should be no greater than $111,474.23.

---

[2] According to the Inflation Calculator on the Bureau of Labor Statistics website (http://www.bls.gov/data/inflation_calculator.htm).

5

## CONCLUSION

For the above-stated reasons, Mr. Uchitel respectfully requests that he be credited with the statutory rate of interest on his initial deposit of $250,000.00; thus completely offsetting Plaintiff's claim, and requiring a denial of Plaintiff's motion and a dismissal of his action. Alternatively, a reasonable rate of return should be allocated to Mr. Uchitel, considering that Mr. Uchitel was denied the use of his money for over 14 ½ years.

At the very least, a baseline of the rate of inflation should be credited as an offset in the amount of $103,169.66 so Mr. Uchitel is not placed in a worse position than he was prior to his investment. In a very real sense, this would cause Mr. Uchitel, an innocent victim, to pay for the Mr. Stein's wrongdoing. Therefore, if granted, Plaintiff's summary judgment should be for no more than $111,474.23.


Dated: October 21, 2011
       Garden City, New York

_/s/ Michael S. Finkelstein_
Michael S. Finkelstein, Esq. (MF4702)
FINKELSTEIN & FEIL, LLP
*Attorneys for Defendant Uchitel*
666 Old Country Road, Suite 210
Garden City, NY 11530
Phone: 516-280-3660
Fax: 516-280-3661